IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| STEVEN R. WILLIAMS,<br><br>Plaintiff,<br><br>vs.<br><br>FEDEX CORPORATE SERVICES, a Delaware corporation; MICHAEL BAUTCH, an individual; KEVIN WILCZYNSKI, an individual; DAVID TREASE, an individual; AETNA LIFE INSURANCE COMPANY, a Connecticut corporation; ROCKY MOUNTAIN CARE CLINIC, INC., an expired Utah corporation; JOHN A. GARCIA and CHRISTINA A. BACK individually and doing business as ROCKY MOUNTAIN CARE CLINIC, INC; and ESCREEN, INC, a Delaware corporation,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT MICHAEL BAUTCH'S MOTION TO DISMISS<br><br>Case No. 2:13-CV-37 TS |

This matter is before the Court on Defendant Michael Bautch's Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim. For the reasons discussed below, the Court will grant the Motion in part and deny it in part.

I. BACKGROUND

The following facts are relevant to Defendant's Motion to Dismiss and are taken from Plaintiff's Amended Complaint unless otherwise noted.

1

Plaintiff Steven R. Williams is a FedEx employee and has worked with the company since 1989, with the exception of a two-year period. Plaintiff is currently a Senior International Account Executive.

During the relevant time period, Defendant Michael Bautch ("Bautch") was a resident of the state of California[1] and, at all times relevant, was a Managing Director of International Sales for FedEx.

In December 2010, FedEx reorganized its International Sales Overlays, resulting in a tripling of Plaintiff's workload. To manage his workload, Plaintiff frequently worked between sixteen and nineteen hours a day. Plaintiff alleges that he often made requests to Defendant Bautch that the situation be remedied. Plaintiff's pleas were ignored and he was told by FedEx that the situation would not be corrected.

In late August or early September 2011, Plaintiff reached out to Ron Campos, another FedEx employee, during a training session on work-life balance. Mr. Campos contacted Bautch whothen met with Plaintiff. During the meeting, Plaintiff alleges Bautch refused to get Plaintiff help for at least three more months, verbally berated Plaintiff, threatened Plaintiff's job, and threatened Plaintiff's attempts to obtain a FedEx Trade Networks sales position in Salt Lake City. Plaintiff alleges that he was forced to take a medical leave of absence due to the anxiety and stress from his increased workload and Bautch's behavior.

---

[1] Both Plaintiff's Complaint and Defendant's Motion to Dismiss state that he is a resident of California. However, Bautch's Declaration states that, in June 2012, he relocated to Michigan and currently resides there. *See* Docket No. 15-1 ¶ 12.

Plaintiff brings a claim for intentional infliction of emotional distress against Defendant Bautch.

## II. STANDARDS OF REVIEW

### A. PERSONAL JURISDICTION

"The plaintiff bears the burden of establishing personal jurisdiction, but where, as here, the issue is raised early on in litigation, based on pleadings . . . and affidavits, that burden can be met by a prima facie showing."[2] "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor . . . ."[3]

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment."[4] "It is frequently helpful to undertake the due process analysis first, because any set of circumstances that satisfies due process will also satisfy the long-arm statute."[5] The "minimum contacts" standard can be established through a finding of either general jurisdiction or specific jurisdiction.

---

[2] *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) (quoting *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1069-70 (10th Cir. 2008)).

[3] *Kennedy v. Freeman*, 919 F.2d 126, 128 (10th Cir. 1990) (quoting *Behagen v. Amateur Basketball Ass'n of the US,* 744 F.2d 731, 733 (10th Cir. 1984), *cert. denied,* 471 U.S. 1010 (1985)).

[4] *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999).

[5] *Sys. Designs, Inc. v. New Customward Co.*, 248 F. Supp. 2d 1093, 1097 (D. Utah 2003).

B.  RULE 12(b)(6) MOTION TO DISMISS

In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiff as the nonmoving party.[6]  Plaintiff must provide "enough facts to state a claim to relief that is plausible on its face,"[7] which requires "more than an unadorned, the-defendant-unlawfully harmed-me accusation."[8]

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[9]  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[10]  As the Court in *Iqbal* stated,

> only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

---

[6] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[7] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

[8] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[9] *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

[10] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

complaint has alleged—but it has not show[n]—that the pleader is entitled to relief.[11]

### III. DISCUSSION

A. PERSONAL JURISDICTION

Plaintiff alleges that (1) in June and August 2011 Defendant Bautch visited Utah in a job-related capacity, for the express purpose of managing the Utah sales manager and the two account executives in the Salt Lake City market; (2) from October 2006 until leaving FedEx in April 2011, Defendant "frequently made contacts with Utah in a job related capacity," including multiple visits to the state; and (3) in October 2006, Defendant became the director for the Western Region International Sales division, which included supervising the sales manager responsible for the Utah territory (Plaintiff's supervisor). Additionally, Plaintiff asserts that Defendant "obviously . . . engaged in frequent and substantive contact with Mr. Williams in Utah,"[12] during the five and a half years he directed the activity of FedEx's international sales, including the management of personnel located in Utah. Defendant Bautch argues that these contacts are insufficient to allow the Court to find either general or specific jurisdiction over him.

---

[11] *Iqbal*, 556 U.S. at 679 (alteration in original) (internal quotation marks and citations omitted).

[12] Docket No. 58, at 10.

### 1. *General Jurisdiction*

For general jurisdiction to exist, "'the defendant must be conducting substantial and continuous local activity in the forum state.'"[13] These activities must be continuous and systematic to justify a finding of general jurisdiction.[14]

Additionally, "[i]t is the defendant's contacts with the forum state that are of interest in determining whether personal jurisdiction exists, not its contacts with a resident of the forum."[15] "Simply because a defendant has a contractual relationship and business dealings with a person or entity in the forum state does not subject him to general jurisdiction there."[16]

Plaintiff asserts that the Court has "at the very least, specific jurisdiction," but makes no effort to establish general jurisdiction. Since Plaintiff bears the burden of establishing personal jurisdiction,[17] the Court finds it does not have general jurisdiction over Defendant Bautch. Furthermore, Defendant's aforementioned contacts do not rise to the level of continuous and systematic contact with the state that justify the exercise of jurisdiction over him.

### 2. *Specific Jurisdiction*

The evaluation of specific jurisdiction in Utah mandates a three-part inquiry: '(1) the defendant's acts or contacts must implicate Utah under the Utah long-arm statute; (2) a 'nexus' must exist between the plaintiff's claims and the defendant's

---

[13] *Soma*, 196 F.3d at 1295 (quoting *Arguello v. Indus. Woodworking Mach. Co.*, 838 P.2d 1120, 1122 (Utah 1992)).

[14] *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984).

[15] *Trujillo v. Williams*, 465 F.3d 1210, 1220 (10th Cir. 2006) (quoting *Institutional Food Mktg. Assocs., Ltd. v. Golden State Strawberries, Inc.*, 747 F.2d 448, 456 (8th Cir. 1984)).

[16] *Shrader*, 633 F.3d at 1246-47; *see e.g.*, *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 416-18; *Benton v. Cameco Corp.*, 375 F.3d 1070, 1073, 1080-81 (10th Cir. 2004).

[17] *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir. 1996).

acts or contacts; and (3) application of the Utah long-arm statute must satisfy the requirements of federal due process.'[18]

The Utah Legislature has determined the Utah long-arm statute "should be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution."[19] The Utah Supreme Court "frequently make[s] a due process analysis first because any set of circumstances that satisfies due process will also satisfy the long-arm statute."[20]

"A court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum state."[21] The "minimum contacts" standard for personal jurisdiction first requires that the nonresident defendant "'purposefully directed' its activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' defendant's forum-related activities."[22] Additionally, the exercise of personal jurisdiction "must always be consonant with traditional notions of fair play and substantial justice."[23] "In other words, submission through contact with and activity directed

---

[18] *Soma* 196 F.3d at 1297 (quoting *Nat'l Petroleum Mktg., Inc. v. Phoenix Fuel Co.*, 902 F. Supp. 1459, 1465 (D. Utah 1995)).

[19] Utah Code Ann. § 78B-3-201(3) (2008).

[20] *Soma*, 196 F.3d at 1298 (quoting *SII MegaDiamond, Inc. v. Am. Superabrasives Corp.*, 969 P.2d 430, 433 (Utah 1998)); *see also Farr West Capital, Inc. v. Towne*, 46 F.3d 1071, 1075 (10th Cir. 1995).

[21] *World-Wide Volkswagen Co. v. Woodson*, 444 U.S. 286, 291 (1980) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S 310, 316 (1945)).

[22] *Dudnikov*, 514 F.3d at 1071 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

[23] *Id*.

at a sovereign may justify specific jurisdiction 'in a suit arising out of or related to the defendant's contacts with the forum.'"[24]

### a. Purposeful Direction

"In the tort context, we often ask whether the nonresident defendant 'purposefully directed' its activities at the forum state."[25] The Supreme Court discussed purposeful direction in *Calder v. Jones*.[26] *Calder* involved an allegedly defamatory article written and edited in Florida by a Florida resident, a reporter for the National Enquirer. The article concerned the California activities of a California resident, impugned the professionalism of an entertainer whose television career was centered in California, was drawn from California sources, and the brunt of the harm was suffered in California.[27] Further, the defendants there created an article "that they knew would have a potentially devastating impact upon respondent. And they knew that the brunt of the injury would be felt by respondent in the State in which she lives and works . . . ."[28]

The Court found that personal jurisdiction in California existed because of ties to that state. The Court stated in *Calder* that "[a]n individual injured in California need not go to Florida to seek redress from persons, who, though remaining in Florida, knowingly cause the

---

[24] *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2788 (2011) (quoting *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414 n.8).

[25] *Dudnikov*, 514 F.3d at 1071.

[26] 465 U.S. 783 (1984).

[27] *Id*. at 788-89.

[28] *Id*. at 789-90.

8

injury in California."[29] However, the Court also stated that "[t]he mere fact that [the defendant] can 'foresee' that the article will be circulated and have an effect in [the forum state] is not sufficient for an assertion of jurisdiction."[30]

The Tenth Circuit has distilled *Calder* to the following salient factors that together indicate purposeful direction:

> "(a) an intentional action (writing, editing, and publishing the article), that was (b) expressly aimed at the forum state (the article was about a California resident and her activities in California; likewise it was drawn from California sources and widely distributed in that state), with (c) knowledge that the brunt of the injury would be felt in the forum state (defendants knew Ms. Jones was in California and that her career revolved around the entertainment industry)."[31]

Applying this standard, it is a reasonable inference that Defendant's alleged acts—refusing to provide Plaintiff relief from his workload, verbally berating Plaintiff, threatening to terminate Plaintiff, obstructing Plaintiff's efforts to obtain another position, and forcing him into the substance abuse program—were done intentionally. Further, there are sufficient allegations that Bautch's conduct was expressly aimed at Utah with knowledge that the brunt of the injury would be felt by Plaintiff in Utah.

### b. Nexus

The Court must also determine whether a "nexus" exists between Defendant's forum-related contacts and the injury to Plaintiff.[32] When analyzing this issue, courts have followed

---

[29] *Id*. at 790.

[30] *Id*. at 789.

[31] *Shrader*, 633 F.3d at 1240 (quoting *Dudnikov*, 514 F.3d at 1072).

[32] *Soma*, 196 F.3d at 1297.

9

one of three approaches: (1) "but-for" causation; (2) proximate cause; or (3) substantial connection.[33] Under the but-for test, "any event in the causal chain leading to the plaintiff's injury is sufficiently related to the claim to support the exercise of personal jurisdiction."[34] The proximate causation test is much more restrictive and requires the court to "examine whether any of the defendant's contacts with the forum are relevant to the merits of the plaintiff's claim."[35] The Tenth Circuit has rejected the "substantial connection" test, finding that it "inappropriately blurs the distinction between specific and general jurisdiction."[36]

The court in *Dudnikov* found "no need to pick sides" between the but-for and proximate causation tests.[37] However, "the requirement 'that the claim arises out of or results from the forum-related activities, is . . . not satisfied' when the plaintiff 'would have suffered the same injury even if none of the [defendant's forum] contacts had taken place.'"[38]

Under either test it can reasonably be said that at least one of Defendant Bautch's visits to the State and some of his interactions with Plaintiff in Utah create the requisite nexus between Defendant's contacts and Plaintiff's alleged injury. Certainly, the meeting in Utah, during which Defendant allegedly verbally berated Plaintiff, is a part of the causal chain that led to the alleged emotional distress and is relevant to Plaintiff's claim for intentional infliction of emotional

---

[33] *Dudnikov*, 514 F.3d at 1078.

[34] *Id.*

[35] *Id.* (quoting *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 319 (3d Cir. 2007)).

[36] *Id.*

[37] *Id.* at 1079.

[38] *Kuenzle*, 102 F.3d at 456-57 (alterations in original) (quoting *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267 (9th Cir. 1995)).

distress. It is also evident that Defendant would have communicated with employees in Utah, including Plaintiff's supervisors, when he mandated Plaintiff's enrollment in the substance abuse program and when he allegedly undermined Plaintiff's efforts to obtain an alternative position in the Salt Lake office. Additionally, taking Plaintiff's allegations as true, Defendant twice required Plaintiff to respond within hours to letters sent to his home. These contacts with Utah are both links in the causal chain and relevant to the merits of Plaintiff's intentional infliction of emotional distress claim. Thus, Defendant Bautch's contacts are sufficiently related to Plaintiff's claim to establish the requisite nexus.

### 3. *Traditional Notions of Fair Play and Substantial Justice*

The Court must also determine whether personal jurisdiction is reasonable in light of the circumstances surrounding the case, or, in other words, that exercising jurisdiction would not "offend traditional notions of fair play and substantial justice."[39]

> "Courts consider the following factors to decide whether exercise of jurisdiction is reasonable: (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive policies."[40]

Of these five factors only the first three are relevant.

Because Defendant currently resides in Michigan and is no longer working for FedEx, the burden on Defendant would be significant. If the claim were to be litigated in Utah, Defendant would likely have to travel to the state on several occasions throughout the litigation process.

---

[39] *Id.*

[40] *Bell Helicopter Textron, Inc. v. Heliquest Int'l Ltd*, 385 F.3d 1291, 1296 (10th Cir. 2004).

As with any claim, the state has an interest in keeping related claims together and providing a forum for its citizens to seek relief for their injuries. Beyond this, Utah has no specific interest in the resolution of this claim, as it arises from a dispute involving parties from a variety of states.

However, under the third factor, Plaintiff has a strong interest in litigating the matter in Utah. Because Plaintiff lives and works in Utah, his alleged injuries occurred in Utah, and the meeting between Plaintiff and Defendant took place in Utah, it is likely that the majority of the potential witnesses and evidence are located in Utah. Additionally, Plaintiff has brought a number of related claims against other parties. It would be both convenient and effective to litigate these claims together.

These factors generally balance each other out, but there is nothing to suggest that it would be unreasonable to exercise jurisdiction in this case. Therefore, the Court finds it has personal jurisdiction over Defendant Bautch and that exercising personal jurisdiction would not offend the traditional notions of fair play and substantial justice.

B. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In order to sufficiently state a claim of intentional infliction of emotional distress, a plaintiff must demonstrate that the defendant

> intentionally engaged in some conduct toward the plaintiff, (a) with the purpose of inflicting emotional distress, or, (b) where any reasonable person would have known that such would result; *and* his actions are of such a nature as to be considered outrageous and intolerable in that they offend against the generally accepted standards of decency and morality.[41]

---

[41] *Bennett v. Jones, Waldo, Holbrook & McDonough*, 70 P.3d 17, 30 (Utah 2003) (quoting *Franco v. Church of Jesus Christ of Latter-day Saints*, 21 P.3d 198, 206 (Utah 2001)).

"To be considered outrageous, the conduct must evoke outrage or revulsion; it must be more than unreasonable, unkind, or unfair."[42] "'[I]t is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery.'"[43] "However, '[w]here reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability.'"[44]

> "Due to the highly subjective and volatile nature of emotional distress and the variability of its causations, the courts have historically been wary of dangers in opening the door to recovery therefore. This is partly because such claims may easily be fabricated: or as sometimes stated, are easy to assert and hard to defend against."[45]

Therefore, the sufficiency of Plaintiff's pleadings "must be determined by facts pleaded rather than the conclusions stated."[46]

In the present case, Plaintiff asserts outrageous and intolerable behavior based on an alleged pattern of abusive and inappropriate behavior. Plaintiff alleges Defendant Bautch ignored Plaintiff's requests for a reduced workload, berated Plaintiff and threatened Plaintiff's job during a meeting, forced Plaintiff into the drug-testing policy after taking medical leave in retaliation for seeking help from Mr. Campos, twice threatened Plaintiff with termination if he did not respond to letters sent to his home, and intentionally undermined Plaintiff's efforts to

---

[42] *Franco*, 21 P.3d at 207 (internal quotation marks and citations omitted).

[43] *Cabaness v. Thomas*, 232 P.3d 486, 499 (Utah 2010) (quoting *Gygi v. Storch*, 503 P.2d 449, 450 (Utah 1972)).

[44] *Id*. (quoting *Gygi*, 503 P.2d at 450).

[45] *Franco*, 21 P.3d at 206 (quoting *Samms v. Eccles*, 358 P.2d 344, 345 (Utah 1961)).

[46] *Id*. (quoting *Ellefsen v. Roberts*, 526 P.2d 912, 915 (Utah 1974)).

apply for another job within FedEx.  These actions, when taken together or individually, do not rise to the level of outrageous and intolerable behavior that evokes outrage and revulsion.

The cases cited by Plaintiff support this finding.  For example, in *Retherford v. AT&T Communications of Mountain States, Inc.*,[47] the Utah Supreme Court found sufficient facts to support an intentional infliction claim where the plaintiff had alleged "months of persecution by her co-workers" including allegations that her co-workers "shadowed her movements, intimidated her with threatening looks and remarks, and manipulated circumstances at her work in ways that made her job markedly more stressful, all in retaliation for her good-faith complaint of sexual harassment."[48]

Similarly in *Cabaness v. Thomas*,[49] the plaintiff had alleged years of abusive behavior at the hands of his supervisor Thomas.  The court stated:

> Cabaness has alleged an ongoing and continuous pattern of abusive, intimidating, and harassing behavior from his supervisor, Thomas. Throughout Cabaness' career, Thomas insulted and demeaned him by, among other things, calling him "dumbass," "jackass," and "ass hole." Thomas often told Cabaness he had a "piss poor attitude."  Indeed, many employees testified that Thomas frequently used gross profanity and consistently verbally harassed the employees, including Cabaness.  On one occasion, Thomas told Cabaness that his problem was his wife, and that he needed to get rid of his wife.  Various employees testified that Cabaness was often the focus of Thomas' abusive behavior, especially towards the end of his employment with Bountiful Power.  Cabaness and other employees frequently complained to Michaelis about Thomas' conduct. As in *Retherford*, Cabaness and other employees testified that Thomas' behavior worsened after they complained to Michaelis about his conduct.
> Cabaness also provided evidence demonstrating that Thomas intentionally made Cabaness' job more difficult and stressful.  For example, on various

---

[47] 844 P.2d 949 (Utah 1992).

[48] *Id*. at 978.

[49] 232 P.3d 486 (Utah 2010).

occasions Thomas would arrive at a work site and mandate that Cabaness and other employees stop what they were doing and do things the way he wanted without providing any justification other than his superiority. Similarly, Cabaness testified that Thomas frequently told him that he was lucky to have his job and that he could be fired if he did not do what he was told.[50]

The allegations in this case fall short of what was alleged in *Retherford* and *Cabaness*. Therefore, this claim will be dismissed.

Plaintiff makes additional allegations that Defendants Bautch, Trease, Wilczynski, and FedEx falsely claimed Plaintiff had a substance abuse problem, falsely told FedEx employees Plaintiff had a substance abuse problem and that was his reason for his disability leave, and required Plaintiff to participate in a substance abuse program when they knew he did not have a substance abuse problem.[51] However, these actions cannot be attributed to any one individual and are, in some cases, attributed solely to FedEx.[52]

Plaintiff argues that these allegations in the Amended Complaint state that FedEx was acting through its agents, and these agents, including Defendant Bautch, allegedly acted with the intent to inflict emotional and psychological distress upon Plaintiff.[53] Under Utah law, an employer would "ordinarily be vicariously liable for any negligent act . . . performed within the scope of his employment."[54] However, as Defendant correctly argues, it does not follow that

---

[50] *Id.* at 500.

[51] Docket No. 3 ¶ 83.

[52] *See id.* ¶ 37 ("Despite overwhelming evidence from [Plaintiff's] medical records and medical providers, FedEx has refused to remove him from the substance abuse program. . . .").

[53] Docket No. 49, at 8.

[54] *Kunz v. Beneficial Temps.*, 921 P.2d 456, 460 (Utah 1996) (citing *Birkner v. Salt Lake Cnty.*, 771 P.2d 1053, 1056-57 (Utah 1989)).

15

one employee may be individually liable for the aggregated actions of other employees.[55] Defendant Bautch is not the employer of the other employees at FedEx and therefore cannot be held vicariously liable for their actions. Plaintiff has not sufficiently alleged in the Amended Complaint or proposed Second Amended Complaint that Defendant Bautch committed these acts individually, and the only allegations that potentially support such a finding are conclusory and found only in Plaintiff's Memorandum in Opposition.

Defendant Bautch further argues that Plaintiff's intentional infliction of emotional distress claim is barred by the exclusive remedy provision of the Workers' Compensation Act. The Act provides, in pertinent part:

> The right to recover compensation pursuant to this chapter for injuries sustained by an employee, whether resulting in death or not, is the exclusive remedy against the employer . . . and the liabilities of the employer imposed by this chapter is in place of any and all other civil liability whatsoever, at common law or otherwise, to the employee . . . on account of any accident or injury or death, in any way contracted, sustained, aggravated, or incurred by the employee in the course of or because of or arising out of the employee's employment, and an action at law may not be maintained against an employer . . . based upon any accident, injury, or death of an employee.[56]

The Utah Supreme Court has held the Workers' Compensation Act provides the exclusive remedy for intentional infliction of emotional distress unless the plaintiff can prove the employer "intended or directed the injurious act."[57] In *Helf v. Chevron USA, Inc.*,[58] the Utah Supreme Court stated that the "intent to injure" standard requires "an injured employee to show

---

[55] Docket No. 56, at 3.

[56] Utah Code Ann. § 34A-2-105(1).

[57] *Mounteer v. Utah Power & Light Co.*, 823 P.2d 1055, 1058 (Utah 1991).

[58] 203 P.3d 962 (Utah 2009).

16

that his employer or fellow employee manifested a deliberate intent to injure him."[59] The court clarified that "the 'intent to injure' analysis focuses on whether the actor knew or expected that injury would occur as a consequence of his actions."[60] "Thus, the 'intent to injure' standard distinguishes between intentional acts resulting in unknown or unexpected injuries, which are covered under the Act by workers' compensation, and intentional acts resulting in known or expected injuries, which fall within the intentional injury exception."[61] Therefore, "a plaintiff may successfully plead an intentional injury by showing that the injury was *either* intended or expected."[62]

> We therefore hold that the "intent to injure" standard requires a specific mental state in which the actor knew or expected that injury would be the consequence of his action. To demonstrate intent, a plaintiff may show that the actor desired the consequences of his actions, or that the actor believed the consequences were virtually certain to result. But a plaintiff may not demonstrate intent by showing merely that some injury was substantially certain to occur at some time. For a workplace injury to qualify as an intentional injury under the Act, the employer or supervisor must know or expect that the assigned task will injure the particular employee that undertakes it. In other words, the employer must know or expect that a specific employee will be injured doing a specific task. In these situations, the knowledge and expectation that injury will occur robs an injury of its accidental character, moving it out of the realm of negligence and into the realm of intent.[63]

Plaintiff's allegations do not sufficiently allege the requisite intent to injure. Rather, Plaintiff merely recites the requisite standard stating, "[t]he Defendants each knew, or should

---

[59] *Id*. at 969 (internal quotation marks and citation omitted).

[60] *Id*. at 970.

[61] *Id*.

[62] *Id*. at 971.

[63] *Id*. at 974.

have known, that their pattern of abusive and inappropriate behavior towards [Plaintiff] would inflict emotional and psychological distress upon [Plaintiff]."[64] The only factual allegations that may support this conclusory statement are those concerning Defendant Bautch's knowledge of Plaintiff's stress and anxiety. However, even if Defendant Bautch's actions were to be deemed outrageous and intolerable, the simple knowledge of Plaintiff's workload concerns and of his short-term disability leave is insufficient to establish the requisite mental state. Therefore, Plaintiff has failed to allege the requisite intent to injure necessary to exceed the exclusive remedy provision of the Workers' Compensation Act.

III. CONCLUSION

Based on the above, Defendant Bautch's Motion to Dismiss for Failure to State a Claim (Docket No. 51) is GRANTED IN PART AND DENIED IN PART.

DATED August 21, 2013.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[64] Docket No. 3, ¶ 75.

18