IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| STEVEN R. WILLIAMS,<br><br>     Plaintiff,<br><br><br><br>          vs.<br><br>FEDEX CORPORATE SERVICES, a Delaware corporation; MICHAEL BAUTCH, an individual; KEVIN WILCZYNSKI, an individual; DAVID TREASE, an individual; AETNA LIFE INSURANCE COMPANY, a Connecticut corporation; ROCKY MOUNTAIN CARE CLINIC, INC., an expired Utah corporation; JOHN A. GARCIA and CHRISTINA A. BACK individually and doing business as ROCKY MOUNTAIN CARE CLINIC, INC; and ESCREEN, INC, a Delaware corporation,<br><br>     Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT DAVID TREASE'S MOTION TO DISMISS<br><br><br><br>  Case No. 2:13-CV-37 TS |

This matter is before the Court on Defendant David Trease's Motion to Dismiss for Failure to State a Claim.  For the reasons discussed below, the Court will grant the Motion.

## I.  BACKGROUND

The following facts are relevant to Defendant's Motion to Dismiss and are taken from Plaintiff's Amended Complaint unless otherwise stated.

1

Plaintiff Steven R. Williams is a FedEx employee and has worked with the company since 1989, with the exception of a two-year period.  Plaintiff is currently a Senior International Account Executive.  Defendant David Trease is a Regional Sales Manager for FedEx.

In December 2010, FedEx reorganized its International Sales Overlays, resulting in a tripling of Plaintiff's workload.  To manage his workload, Plaintiff frequently worked between sixteen and nineteen hours a day.  Plaintiff often made requests to Kevin Wilczynski, Plaintiff's supervisor at the time, and Michael Bautch, Wilczynski's supervisor, that the situation be remedied.  Plaintiff's pleas were ignored and he was told by FedEx that the situation would not be corrected.

In late August or early September 2011, Plaintiff spoke with Ron Campos, another FedEx employee, during a training session on work-life balance.  Campos contacted Michael Bautch, and Bautch then met with Plaintiff.  During the meeting with Bautch, Plaintiff alleges Bautch refused to get Plaintiff help for at least three more months, verbally berated Plaintiff, threatened Plaintiff's job, and threatened Plaintiff's attempts to obtain a FedEx Trade Networks sales position in Salt Lake City.  Plaintiff alleges he was forced to take a medical leave of absence due to the anxiety and stress from his increased workload and Bautch's behavior.

Defendant Trease became Plaintiff's supervisor during his leave of absence.  On November 9, 2011, Trease sent Plaintiff a letter informing him that Aetna Life Insurance Company ("Aetna")—to whom Plaintiff had submitted a short-term disability claim—had claimed that Plaintiff's claim for medical leave was due to an alcohol/drug related illness. Because Plaintiff had accessed treatment and/or benefits, FedEx determined that Plaintiff had self-reported drug abuse and FedEx required Plaintiff to participate in a substance abuse program

for five years.  Plaintiff provided FedEx and Aetna with letters from his medical providers indicating that Plaintiff had never used non-prescription drugs or abused prescription medications, and he was incorrectly placed in the substance abuse program.  FedEx continued to require Plaintiff to participate in the substance abuse program.

Upon his return to work, Plaintiff was forced to do unnecessary work, allegedly in retaliation for taking his leave.  Defendant Trease also allegedly threatened to give Plaintiff a low performance evaluation because of his leave.  Plaintiff alleges that managers at FedEx denigrated Plaintiff and disclosed private health care information to FedEx employees.  Plaintiff further alleges that his efforts to apply for different positions within FedEx were intentionally undermined by Bautch.

Plaintiff brings claim against Defendant Trease for intentional infliction of emotional distress and discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA").

## II.  STANDARD OF REVIEW

In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiff as the nonmoving party.[1]  Plaintiff must provide "enough facts to state a claim to relief that is

---

[1] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

plausible on its face,"[2] which requires "more than an unadorned, the-defendant-unlawfully harmed-me accusation."[3]

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[4]  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[5] As the Court in *Iqbal* stated,

> only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief.[6]

## III.   DISCUSSION

### A.     INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In order to sufficiently state a claim of intentional infliction of emotional distress, a plaintiff must demonstrate that the defendant

---

[2] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

[3] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

[5] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[6] *Iqbal*, 556 U.S. at 679 (alteration in original) (internal quotation marks and citations omitted).

intentionally engaged in some conduct toward the plaintiff, (a) with the purpose of inflicting emotional distress, or, (b) where any reasonable person would have known that such would result; *and* his actions are of such a nature as to be considered outrageous and intolerable in that they offend against the generally accepted standards of decency and morality.[7]

"To be considered outrageous, the conduct must evoke outrage or revulsion; it must be more than unreasonable, unkind, or unfair."[8]   "'[I]t is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery.'"[9]   "However, '[w]here reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability.'"[10]

"Due to the highly subjective and volatile nature of emotional distress and the variability of its causations, the courts have historically been wary of dangers in opening the door to recovery therefore.  This is partly because such claims may easily be fabricated: or as sometimes stated, are easy to assert and hard to defend against."[11]

Therefore, the sufficiency of Plaintiff's pleadings "must be determined by facts pleaded rather than the conclusions stated."[12]

---

[7] *Bennett v. Jones, Waldo, Holbrook & McDonough*, 70 P.3d 17, 30 (Utah 2003) (quoting *Franco v. Church of Jesus Christ of Latter-day Saints*, 21 P.3d 198, 206 (Utah 2001)).

[8] *Franco*, 21 P.3d at 207 (internal quotation marks and citations omitted).

[9] *Cabaness v. Thomas*, 232 P.3d 486, 499 (Utah 2010) (quoting *Gygi v. Storch*, 503 P.2d 449, 450 (Utah 1972)).

[10] *Id*. (quoting *Gygi*, 503 P.2d at 450).

[11] *Franco*, 21 P.3d at 206 (quoting *Samms v. Eccles*, 358 P.2d 344, 345 (Utah 1961)).

[12] *Id*. (quoting *Ellefsen v. Roberts*, 526 P.2d 912, 915 (Utah 1974)).

In the present case, Plaintiff cites two incidents directly involving Defendant Trease that give rise to his claim of intentional infliction of emotional distress: (1) Trease sent Plaintiff a letter informing Plaintiff he had self-reported drug abuse based on Aetna's claim;[13] and (2) Trease threatened to give Plaintiff a low performance evaluation "because of his leave."[14]  These actions, when considered together or individually, do not rise to the level of outrageous and intolerable behavior that evokes outrage and revulsion.

In his Memorandum in Opposition, Plaintiff argues that Trease "personally continued and exacerbated the discriminatory and retaliatory treatment to which Mr. Williams had been subject by other FedEx managers," ordered Plaintiff to enter FedEx's substance abuse program, forced Plaintiff to do "unnecessary, redundant work," "disparaged him to others inside the FedEx organization," "disclosed [Plaintiff's] private health care information to other employees," and "spread false allegations that [Plaintiff] tested positive for illicit and illegal drugs."[15]  Nowhere does the Amended Complaint or the proposed Second Amended Complaint state that Defendant Trease was personally responsible for this alleged misconduct.  Instead it states that "[Plaintiff] was forced into the drug testing policy . . . by Mr. Bautch,"[16]  "Mr. Williams was . . . forced to

---

[13] Docket No. 3 ¶ 32.

[14] *Id.* ¶ 40.

[15] Docket No. 49, at 6.

[16] Docket No. 3 ¶ 38.

do unnecessary, redundant work"[17] and "managers at FedEx disparaged [Plaintiff] and disclosed private health care information to employees at FedEx."[18]

Plaintiff argues that the allegations in the Amended Complaint state that FedEx was acting through its agents and these agents, including Defendant Trease, allegedly acted with the intent to inflict emotional and psychological distress upon Plaintiff.[19]  Under Utah law, an employer would "ordinarily be vicariously liable for any [employee's] negligent act . . . performed within the scope of his employment."[20]  However, as Defendant correctly argues, it does not follow that one employee may be individually liable for the aggregated actions of other employees.[21]  Defendant Trease is not the employer of the other employees at FedEx and therefore cannot be held vicariously liable for their actions.  Plaintiff has not sufficiently alleged in the Amended Complaint or proposed Second Amended Complaint that Defendant Trease committed these acts individually, and the only allegations that potentially support such a finding are conclusory and found only in Plaintiff's Memorandum in Opposition.

The cases cited by Plaintiff support this finding.  For example, in *Retherford v. AT&T Communications of Mountain States, Inc.*,[22] the Utah Supreme Court found sufficient facts to support an intentional infliction claim where the plaintiff had alleged "months of persecution by

---

[17] *Id.* ¶ 40.

[18] *Id.*

[19] Docket No. 49, at 8.

[20] *Kunz v. Beneficial Temps.*, 921 P.2d 456, 460 (Utah 1996) (citing *Birkner v. Salt Lake Cnty.*, 771 P.2d 1053, 1056-57 (Utah 1989)).

[21] Docket No. 56, at 3.

[22] 844 P.2d 949 (Utah 1992).

her co-workers" including allegations that her co-workers "shadowed her movements,

intimidated her with threatening looks and remarks, and manipulated circumstances at her work

in ways that made her job markedly more stressful, all in retaliation for her good-faith complaint

of sexual harassment."[23]

      Similarly, in *Cabaness v. Thomas*, the plaintiff had alleged years of abusive behavior at

the hands of his supervisor Thomas.  The court stated:

>     Cabaness has alleged an ongoing and continuous pattern of abusive,
> intimidating, and harassing behavior from his supervisor, Thomas. Throughout
> Cabaness' career, Thomas insulted and demeaned him by, among other things,
> calling him "dumbass," "jackass," and "ass hole." Thomas often told Cabaness he
> had a "piss poor attitude."  Indeed, many employees testified that Thomas
> frequently used gross profanity and consistently verbally harassed the employees,
> including Cabaness.  On one occasion, Thomas told Cabaness that his problem
> was his wife, and that he needed to get rid of his wife.  Various employees
> testified that Cabaness was often the focus of Thomas' abusive behavior,
> especially towards the end of his employment with Bountiful Power.  Cabaness
> and other employees frequently complained to Michaelis about Thomas' conduct.
> As in *Retherford*, Cabaness and other employees testified that Thomas' behavior
> worsened after they complained to Michaelis about his conduct.
>     Cabaness also provided evidence demonstrating that Thomas intentionally
> made Cabaness' job more difficult and stressful.  For example, on various
> occasions Thomas would arrive at a work site and mandate that Cabaness and
> other employees stop what they were doing and do things the way he wanted
> without providing any justification other than his superiority.  Similarly, Cabaness
> testified that Thomas frequently told him that he was lucky to have his job and
> that he could be fired if he did not do what he was told.[24]

      The allegations in this case fall short of what was alleged in *Retherford* and *Cabaness*.

Therefore, this claim must be dismissed.

---

[23] *Id.* at 978.

[24] *Cabaness*, 232 P.3d at 500.

Defendant Trease further argues that Plaintiff's intentional infliction of emotional distress claim is barred by the exclusive remedy provision of the Workers' Compensation Act. The Act provides, in pertinent part:

> The right to recover compensation pursuant to this chapter for injuries sustained by an employee, whether resulting in death or not, is the exclusive remedy against the employer . . . and the liabilities of the employer imposed by this chapter is in place of any and all other civil liability whatsoever, at common law or otherwise, to the employee . . . on account of any accident or injury or death, in any way contracted, sustained, aggravated, or incurred by the employee in the course of or because of or arising out of the employee's employment, and an action at law may not be maintained against an employer . . . based upon any accident, injury, or death of an employee.[25]

The Utah Supreme Court has held the Workers' Compensation Act provides the exclusive remedy for intentional infliction of emotional distress unless the plaintiff can prove the employer "intended or directed the injurious act."[26] In *Helf v. Chevron USA, Inc.*,[27] the Utah Supreme Court stated that the "intent to injure" standard requires "an injured employee to show that his employer or fellow employee manifested a deliberate intent to injure him."[28] The court clarified that "the 'intent to injure' analysis focuses on whether the actor knew or expected that injury would occur as a consequence of his actions."[29] "Thus, the 'intent to injure' standard distinguishes between intentional acts resulting in unknown or unexpected injuries, which are covered under the Act by workers' compensation, and intentional acts resulting in known or

---

[25] Utah Code Ann. § 34A-2-105(1).

[26] *Mounteer v. Utah Power & Light Co.*, 823 P.2d 1055, 1058 (Utah 1991).

[27] 203 P.3d 962 (Utah 2009).

[28] *Id*. at 969 (internal quotation marks and citation omitted).

[29] *Id*. at 970.

expected injuries, which fall within the intentional injury exception."[30]  Therefore, "a plaintiff

may successfully plead an intentional injury by showing that the injury was *either* intended or

expected."[31]

> We therefore hold that the "intent to injure" standard requires a specific mental
> state in which the actor knew or expected that injury would be the consequence of
> his action.  To demonstrate intent, a plaintiff may show that the actor desired the
> consequences of his actions, or that the actor believed the consequences were
> virtually certain to result.  But a plaintiff may not demonstrate intent by showing
> merely that some injury was substantially certain to occur at some time.  For a
> workplace injury to qualify as an intentional injury under the Act, the employer or
> supervisor must know or expect that the assigned task will injure the particular
> employee that undertakes it.  In other words, the employer must know or expect
> that a specific employee will be injured doing a specific task.  In these situations,
> the knowledge and expectation that injury will occur robs an injury of its
> accidental character, moving it out of the realm of negligence and into the realm
> of intent.[32]

In this case, nothing in the record indicates Defendant directed or intended any behavior

to inflict emotional distress.  The only allegations to support such a finding are conclusory and

need not be accepted.  Therefore, the Court finds the claim of intentional infliction of emotional

distress is not sufficiently stated against Defendant Trease.

B.      ADA CLAIMS

Plaintiff's Amended Complaint alleges that Defendant discriminated and retaliated

against Plaintiff in violation of the ADA.[33]  However, as Defendant correctly argues, the Tenth

Circuit has held that "the ADA precludes personal capacity suits against individuals who do not

---

[30] *Id.*

[31] *Id.* at 971.

[32] *Id.* at 974.

[33] Docket No. 3 ¶¶ 57-63, 64-70.

otherwise qualify as employers under the statutory definition."[34]  Plaintiff concedes that there is no individual liability against supervisors under the ADA.[35]  Therefore this claim will be dismissed.

### IV. CONCLUSION

For the reasons stated above, Defendant Trease's Motion to Dismiss for Failure to State a Claim (Docket No. 27) is GRANTED.

DATED  August 21, 2013.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[34] *Butler v. City of Prairie Vill.*, 172 F.3d 736, 744 (10th Cir. 1999).

[35] Docket No. 49, at 8.

11