IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| STEVEN R. WILLIAMS,<br><br>    Plaintiff,<br><br>vs.<br><br>FEDEX CORPORATE SERVICES, a Delaware corporation; MICHAEL BAUTCH, an individual; KEVIN WILCZYNSKI, an individual; DAVID TREASE, an individual; AETNA LIFE INSURANCE COMPANY, a Connecticut corporation; ROCKY MOUNTAIN CARE CLINIC, INC., an expired Utah corporation; JOHN A. GARCIA and CHRISTINA A. BACK individually and doing business as ROCKY MOUNTAIN CARE CLINIC, INC; and ESCREEN, INC, a Delaware corporation,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT KEVIN WILCZYNSKI'S MOTION TO DISMISS<br><br>Case No. 2:13-CV-37 TS |

      This matter is before the Court on Defendant Kevin Wilczynski's Motion to Dismiss for Failure to State a Claim and Lack of Personal Jurisdiction. For the reasons discussed below, the Court will grant the Motion.

I.   BACKGROUND

      The following facts are relevant to Defendant's Motion to Dismiss and are taken from Plaintiff's Amended Complaint unless otherwise noted.

Plaintiff Steven R. Williams is a FedEx employee and has worked with the company since 1989, with the exception of a two-year period. Plaintiff is currently a Senior International Account Executive.

Defendant Kevin Wilczynski was a Sales Manager for the Pacific Northwest Region for International Sales at FedEx from 2006 through April 2011.[1] Until April 2011, he worked in Bellevue, Washington and lived nearby in Puyallup.[2] Defendant hired Plaintiff in 2004 and was his direct supervisor until May 2011, when Defendant became a Sales Manager for Regional Account Management Sales.[3] Defendant then became domiciled in Memphis, Tennessee for work and currently lives nearby.[4]

In December 2010, FedEx reorganized its International Sales Overlays, resulting in a tripling of Plaintiff's workload. To manage his workload, Plaintiff frequently worked between sixteen and nineteen hours a day. Plaintiff often made requests to Defendant and Michael Bautch, Defendant's supervisor, that the situation be remedied. Plaintiff's pleas were ignored and he was told by FedEx that the situation would not be corrected.

In late August or early September 2011, Plaintiff reached out to Ron Campos, another FedEx employee, during a training session on work-life balance. Mr. Campos contacted Michael Bautch, and Mr. Bautch then met with Plaintiff. During the meeting, Plaintiff alleges Mr. Bautch refused to get Plaintiff help for at least three more months, verbally berated Plaintiff, threatened

---

[1] Docket No. 35 ¶ 4.

[2] *Id.*

[3] *Id.* ¶ 5.

[4] *Id.* ¶ 3.

Plaintiff's job, and threatened Plaintiff's attempts to obtain a FedEx Trade Networks sales position in Salt Lake City. Plaintiff alleges that he was forced to take a medical leave of absence due to the anxiety and stress from his increased workload and Mr. Bautch's behavior.

Plaintiff brings a claim of intentional infliction of emotion distress against Defendant Wilczynski. Defendant seeks dismissal, arguing that Plaintiff has failed to state a claim against him and that the Court lacks personal jurisdiction.

## II. DISCUSSION

### A. PERSONAL JURISDICTION

"The plaintiff bears the burden of establishing personal jurisdiction, but where, as here, the issue is raised early on in litigation, based on pleadings . . . and affidavits, that burden can be met by a prima facie showing."[5] "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor . . . ."[6]

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment."[7] "It is frequently helpful to undertake the due process analysis first, because any set of

---

[5] *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) (quoting *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1069-70 (10th Cir. 2008)).

[6] *Kennedy v. Freeman*, 919 F.2d 126, 128 (10th Cir. 1990).

[7] *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999).

circumstances that satisfies due process will also satisfy the long-arm statute."[8] To satisfy the constitutional requirement of due process there must be "minimum contacts" between the defendant and the forum state.[9] The "minimum contacts" standard can be established through a finding of either general jurisdiction or specific jurisdiction. Both will be discussed below.

1. *General Jurisdiction*

For general jurisdiction to exist, "'the defendant must be conducting substantial and continuous local activity in the forum state.'"[10] These activities must be continuous and systematic to justify a finding of general jurisdiction.[11]

Additionally, "[i]t is the defendant's contacts with the forum state that are of interest in determining whether personal jurisdiction exists, not its contacts with a resident of the forum."[12] "Simply because a defendant has a contractual relationship and business dealings with a person or entity in the forum state does not subject him to general jurisdiction there."[13]

Both parties briefly mention general jurisdiction but do not discuss it in detail. Plaintiff mentions that Defendant made contacts with Utah in a job-related capacity from 2004 until April

---

[8] *Sys. Designs, Inc. v. New Customward Co.*, 248 F. Supp. 2d 1093, 1097 (D. Utah 2003).

[9] *World-Wide Volkswagen Co. v. Woodson*, 444 U.S. 286, 291 (1980).

[10] *Soma*, 196 F.3d at 1295 (quoting *Arguello v. Woodworking Mach. Co.*, 838 P.2d 1120, 1122 (Utah 1992)).

[11] *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984).

[12] *Trujillo v. Williams*, 465 F.3d 1210, 1220 (10th Cir. 2006) (quoting *Institutional Food Mktg. Assocs., Ltd. v. Golden State Strawberries, Inc.*, 747 F.2d 448, 456 (8th Cir. 1984)).

[13] *Shrader*, 633 F.3d at 1246-47; *see e.g.*, *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 416-18; *Benton v. Cameco Corp.*, 375 F.3d 1070, 1073, 1080-81 (10th Cir. 2004).

2011 and engaged with Plaintiff through discussions and email about the increased workload. However, Defendant states that he only had four visits to Utah during the relevant time frame.

"It is well-established that phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts."[14] "Sporadic or isolated visits to the forum state will not subject the defendant to general jurisdiction."[15] No other facts show that Mr. Wilczynski's contacts were sufficiently continuous or systematic to subject him to general jurisdiction. Therefore, Defendant's contacts are not sufficient to exercise general jurisdiction.

2. *Specific Jurisdiction*

The evaluation of specific jurisdiction in Utah mandates a three-part inquiry: '(1) the defendant's acts or contacts must implicate Utah under the Utah long-arm statute; (2) a 'nexus' must exist between the plaintiff's claims and the defendant's acts or contacts; and (3) application of the Utah long-arm statute must satisfy the requirements of federal due process.'[16]

The Utah Legislature has determined the Utah long-arm statute "should be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution."[17] The Utah

---

[14] *Soma*, 196 F.3d at 1299 (quoting *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1077 (10th Cir. 1995)).

[15] *Shrader*, 633 F.3d at 1247.

[16] *Soma* 196 F.3d at 1297 (quoting *Nat'l Petroleum Mktg., Inc. v. Phoenix Fuel Co.*, 902 F. Supp. 1459, 1465 (D. Utah 1995)).

[17] Utah Code Ann. § 78B-3-201(3) (2008).

Supreme Court "frequently make[s] a due process analysis first because any set of circumstances that satisfies due process will also satisfy the long-arm statute."[18]

"A court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum state."[19] The "minimum contacts" standard for personal jurisdiction first requires that the nonresident defendant "'purposefully directed' its activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' defendant's forum-related activities."[20] Additionally, the exercise of personal jurisdiction "must always be consonant with traditional notions of fair play and substantial justice."[21] "In other words, submission through contact with and activity directed at a sovereign may justify specific jurisdiction 'in a suit arising out of or related to the defendant's contacts with the forum.'"[22]

### a. *Purposeful Direction*

"In the tort context, we often ask whether the nonresident defendant 'purposefully directed' its activities at the forum state."[23] The Supreme Court discussed purposeful direction

---

[18] *Soma*, 196 F.3d at 1298 (quoting *SII MegaDiamond, Inc. v. Am. Superabrasives Corp.*, 969 P.2d 430, 433 (Utah 1998)); *see also Farr West Capital, Inc.*, 46 F.3d at 1075.

[19] *World-Wide Volkswagen Corp.*, 444 U.S. at 291 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S 310, 316 (1945)).

[20] *Dudnikov*, 514 F.3d at 1071 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

[21] *Id.*

[22] *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2788 (2011) (quoting *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414 n.8).

[23] *Dudnikov*, 514 F.3d at 1071.

in *Calder v. Jones*.[24] *Calder* involved an allegedly defamatory article written and edited in Florida by a Florida resident, a reporter for the National Enquirer. The article concerned the California activities of a California resident, impugned the professionalism of an entertainer whose television career was centered in California, was drawn from California sources, and the brunt of the harm was suffered in California.[25] Further, the defendants there created an article "that they knew would have a potentially devastating impact upon respondent. And they knew that the brunt of the injury would be felt by respondent in the State in which she lives and works . . . ."[26]

The Court found that personal jurisdiction in California existed because of ties to that state. The Court stated in *Calder* that "[a]n individual injured in California need not go to Florida to seek redress from persons, who, though remaining in Florida, knowingly cause the injury in California."[27] However, the Court also stated that "[t]he mere fact that [the defendant] can 'foresee' that the article will be circulated and have an effect in [the forum state] is not sufficient for an assertion of jurisdiction."[28]

The Tenth Circuit has distilled *Calder* to the following salient factors that together indicate purposeful direction:

> "(a) an intentional action (writing, editing, and publishing the article), that was (b) expressly aimed at the forum state (the article was about a California resident and

---

[24] 465 U.S. 783 (1984).

[25] *Id*. at 788-89.

[26] *Id.* at 789-90.

[27] *Id.* at 790.

[28] *Id.* at 789.

7

her activities in California; likewise it was drawn from California sources and widely distributed in that state), with (c) knowledge that the brunt of the injury would be felt in the forum state (defendants knew Ms. Jones was in California and that her career revolved around the entertainment industry)."[29]

Applying this standard, it is reasonable to infer that Defendant's alleged acts, if true, were done intentionally. However, the record shows neither an indication that any acts were directed at the state of Utah, nor an indication Defendant knew the brunt of his actions would be felt in Utah. While Defendant knew the Plaintiff resided in Utah, the facts do not show Defendant *intended* to direct the alleged actions toward Utah.

While the alleged actions may have been directed at Plaintiff, a resident of Utah, the facts as described in both the Amended Complaint and the proposed Second Amended Complaint are not sufficient to find that the alleged actions were purposefully directed at Utah. Therefore, the Court cannot find that the Defendant purposefully directed his activities at residents of Utah.

    b. *Nexus*

The Court must also determine whether a "nexus" exists between Defendant's forum-related contacts and the injury to Plaintiff.[30] When analyzing this issue, courts have followed one of three approaches: (1) "but-for" causation; (2) proximate cause; or (3) substantial connection.[31] Under the but-for test, "any event in the causal chain leading to the plaintiff's injury is sufficiently related to the claim to support the exercise of personal jurisdiction."[32] The

---

[29] *Shrader*, 633 F.3d at 1240 (quoting *Dudnikov*, 514 F.3d at 1072).

[30] *Soma*, 196 F.3d at 1297.

[31] *Dudnikov*, 524 F.3d at 1078.

[32] *Id*.

proximate causation test is much more restrictive and requires the court to "examine whether any of the defendant's contacts with the forum are relevant to the merits of the plaintiff's claim."[33] The Tenth Circuit has rejected the "substantial connection" test, finding that it "inappropriately blurs the distinction between specific and general jurisdiction."[34]

The court in *Dudnikov* found "no need to pick sides" between the but-for and proximate causation tests.[35] However, "the requirement 'that the claim arises out of or results from the forum-related activities, is . . . not satisfied' when the plaintiff 'would have suffered the same injury even if none of the [defendant's forum] contacts had taken place.'"[36]

This Court also does not need to pick sides. Under the but-for test, Defendant's contacts with Utah, emails, phone calls, and the occasional visit, are not the cause of Plaintiff's injury. Under the proximate causation test, the injury does not arise from Defendant's contacts because the contacts established with the State of Utah are not relevant to Plaintiff's claims. Also, the nexus between Defendant's contacts and Plaintiff's injury cannot be established because Plaintiff would still have suffered the same injury even if none of Defendant's forum-related contacts had taken place. Therefore, the Court finds there is no nexus between Defendant's contacts with the forum and the injury to Plaintiff. As a result, there are not sufficient minimum contacts for this Court to exercise personal jurisdiction over Defendant and his Motion must be granted.

---

[33] *Id.* (quoting *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 319 (3d Cir. 2007)).

[34] *Id.*

[35] *Id.* at 1079.

[36] *Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 456-57 (alterations in original) (quoting *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267 (9th Cir. 1995)).

B. FAILURE TO STATE A CLAIM

The Court lacks jurisdiction over Defendant for the reasons discussed above. Therefore, it will not discuss Defendant's failure to state a claim argument in detail. If the Court did have personal jurisdiction over Defendant Wilczynski, Plaintiff's intentional infliction of emotional distress claim would fail for reasons discussed in the Court's other orders.

III. CONCLUSION

For reasons stated above, Defendant Wilczynski's Motion to Dismiss for Lack of Personal Jurisdiction (Docket No. 34) is GRANTED.

DATED August 21, 2013.

BY THE COURT:

_____
TED STEWART
United States District Judge