IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| STEVEN R. WILLIAMS,<br><br>    Plaintiff,<br><br><br><br><br><br>                vs.<br><br><br>FEDEX CORPORATE SERVICES, a Delaware corporation; MICHAEL BAUTCH, an individual; KEVIN WILCZYNSKI, an individual; DAVID TREASE, an individual; AETNA LIFE INSURANCE COMPANY, a Connecticut corporation; ROCKY MOUNTAIN CARE CLINIC, INC., an expired Utah corporation; JOHN A. GARCIA and CHRISTINA A. BACK individually and doing business as ROCKY MOUNTAIN CARE CLINIC, INC; and ESCREEN, INC, a Delaware corporation,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART FEDEX CORPORATE SERVICES, INC.'S MOTION TO DISMISS<br><br><br><br><br><br><br><br>Case No. 2:13-CV-37 TS |

This matter is before the Court on a Motion to Dismiss filed by Defendant FedEx

Corporate Services, Inc. ("FedEx"). For the reasons discussed below, the Court will grant the

Motion in part and deny it in part.

1

I. BACKGROUND

The following facts are taken from Plaintiff's Amended Complaint and Second Amended Complaint, where appropriate.[1]

Plaintiff is, and at all relevant times was, an employee of FedEx Corporate Services ("FedEx"). Plaintiff is currently a Senior International Account Executive. In December 2010, FedEx reorganized its International Sales Overlays, resulting in a tripling of Plaintiff's workload. To manage his workload, Plaintiff frequently worked between sixteen and nineteen hours a day. Plaintiff made requests to his managers to correct the situation, but his pleas were ignored. Eventually, Plaintiff was forced to take a medical leave of absence due to stress and anxiety.

Plaintiff began a medical leave of absence on September 12, 2011, and reported a Short-Term Disability claim ("STD" or "STD claim") to Defendant Aetna Life Insurance Company ("Aetna") on October 3, 2011. On November 9, 2011, David Trease ("Trease"), a Regional Sales Manager for FedEx, sent Plaintiff a letter informing him that Aetna had claimed that Plaintiff's claim for medical leave was due to an alcohol/drug related illness. Because Plaintiff had accessed treatment and/or benefits, FedEx determined that Plaintiff had self-reported drug abuse and FedEx required Plaintiff to participate in a substance abuse program for five years.

In early 2012, Plaintiff was informed by Aetna that his STD claim was denied past December 25, 2011. Aetna stated that his claim was denied because Plaintiff's "absence from

---

[1] The Court has granted Plaintiff leave to file his Second Amended Complaint by separate order.

work was caused by a Chemical Dependency," which Plaintiff claims is untrue. As a result, Plaintiff was forced to return to work.

Plaintiff has been required by FedEx to take eleven different drug tests, none of which have resulted in positive results. On one occasion, Plaintiff was required to urinate in the presence of a drug counselor.

Plaintiff brings claims against FedEx for breach of contract, disability discrimination, disability retaliation, negligent supervision, false light invasion of privacy, intrusion upon seclusion, defamation, and intentional infliction of emotional distress. FedEx seeks dismissal of each of these claims.

## II. STANDARD OF REVIEW

In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiff as the nonmoving party.[2] Plaintiff must provide "enough facts to state a claim to relief that is plausible on its face,"[3] which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[4]

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]'

---

[2] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[3] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

devoid of 'further factual enhancement.'[5]  "The court's function on a Rule 12(b)(6) motion is

not to weigh potential evidence that the parties might present at trial, but to assess whether the

plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[6]

As the Court in *Iqbal* stated,

> only a complaint that states a plausible claim for relief survives a motion to
> dismiss.  Determining whether a complaint states a plausible claim for relief will
> . . . be a context-specific task that requires the reviewing court to draw on its
> judicial experience and common sense.  But where the well-pleaded facts do not
> permit the court to infer more than the mere possibility of misconduct, the
> complaint has alleged—but it has not show[n]—that the pleader is entitled to
> relief.[7]

## III.  DISCUSSION

A.      BREACH OF CONTRACT

Plaintiff's breach of contract claim rests on various provisions of FedEx's policy

manuals.  Plaintiff alleges that these provisions created an implied contract and that FedEx

violated the implied contract by taking action that allegedly conflicted with the policy provisions.

FedEx argues that Plaintiff's breach of contract claim fails because there was no implied

contract.

"An implied contract may arise from a variety of sources including personnel policies or

provisions of an employment manual."[8]  "[F]or an implied-in-fact contract term to exist, it must

_____

[5] *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original).

[6] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[7] *Iqbal*, 556 U.S. at 679 (alteration in original) (internal quotation marks and citations omitted).

[8] *Cabaness v. Thomas*, 232 P.3d 486, 502 (Utah 2010).

4

meet the requirements for an offer of a unilateral contract. There must be a manifestation of the

employer's intent that is communicated to the employee and sufficiently definite to operate as a

contract provision."[9]

> The existence of such an agreement is a question of fact which turns on the
> objective manifestations of the parties' intent. As a question of fact, the intent of
> the parties is primarily a jury question. However, if the evidence presented is such
> that no reasonable jury could conclude that the parties agreed to limit the
> employer's right to terminate the employee, it is appropriate for a court to decide
> the issue as a matter of law.[10]

In *Johnson v. Morton Thiokol, Inc.*, the Utah Supreme Court held "that a clear and

conspicuous disclaimer, as a matter of law, prevents employee manuals or other like material

from being considered as implied-in-fact contract terms."[11] In *Johnson*, the disclaimer stated:

> This book is provided for general guidance only. The policies and procedures
> expressed in this book, as well as those in any other personnel materials which
> may be issued from time to time, do not create a binding contract or any other
> obligation or liability on the company. Your employment is for no set period and
> may be terminated without notice and at will at any time by you or the company.
> The company reserves the right to change these policies and procedures at any
> time for any reason.[12]

Based on this language, the Utah Supreme Court held that Johnson could not bring a

breach of an implied contract claim based upon his termination.

---

[9]*Johnson v. Morton Thiokol, Inc.*, 818 P.2d 997, 1002 (Utah 1991).

[10]*Id*. at 1001.

[11]*Id*. at 1003.

[12]*Id*.

FedEx similarly argues that the policy provisions cited by Plaintiff do not create an implied contract between FedEx and Plaintiff. FedEx relies upon the waiver contained in each of these policy statements, which provides:

> The policies and procedures contained herein are intended solely as a guide for management and employees during employment. It is not a contract of employment, and no such contract may be implied from its provisions. Nothing contained within these policies and procedures shall be construed to abrogate the employment agreement signed upon application for employment preserving the Company's and the employee's right to terminate this relationship at the will of either party.[13]

Plaintiff argues that dismissal is not warranted because the waiver is not as broad as FedEx asserts. Plaintiff argues that the waiver only addresses the issue of at-will employment, an issue that is not present here as Plaintiff remains employed by FedEx. In support of his argument, Plaintiff cites to *Cabaness v. Thomas*.

In *Cabaness*, the Utah Supreme Court interpreted a much more narrow disclaimer than was at issue in *Johnson*. In that case, the disclaimer stated: "No contract exists between Bountiful City and its employees *with respect to* salary, salary ranges, movement within salary ranges, or employee benefits."[14] The court stated:

> Unlike the disclaimer in *Morton Thiokol*, the disclaimer in this case does not contain broad and conspicuous language disclaiming any and all contractual liability. To the contrary, it only disclaims contractual liability "with respect to" a few specifically identified items. Indeed, the plain meaning of the disclaimer in this case is that Bountiful Power intended to create a contract with its employees

---

[13]Docket No. 24, Ex. A, Exs. 1-4.

[14]*Cabaness*, 232 P.3d 503.

with respect to the items in the Employee Manual that are not specifically listed in the disclaimer.[15]

Based on the disclaimer, and other provisions contained in the employment manual, the Utah Supreme Court found that the evidence revealed the defendant's "intent to voluntarily undertake additional duties to protect its employees from misconduct by supervisors or other employees."[16] Therefore, the court found that the provisions of the employment manual created an implied contract.[17]

The language at issue here more closely resembles that found in *Thompson*. While Plaintiff argues that the disclaimer is limited to the issue of at-will employment, the language of the waiver does not support this conclusion. Like the disclaimer in *Thompson*, the disclaimer states that it is meant for guidance only and specifically states that it is not a contract and that "no such contract may be implied from its provisions." While there is language related to at-will employment, similar language is found in the disclaimer in *Thompson*. The existence of such language does not detract from the fact that the policies specifically state that they are "not a contract of employment."

Plaintiff further relies on *Cook v. Zions First National Bank*.[18] In that case, Zions Bank attempted to use a disclaimer to disavow the existence of an express contract for sick leave.[19]

---

[15] *Id*.

[16] *Id*. at 504.

[17] *Id*.

[18] 919 P.2d 56 (Utah Ct. App. 1996).

[19] *Id*. at 59.

However, despite the existence of the disclaimer, Zions continued to act in accordance with the express contract.[20] Because of Zions' actions, the court found the existence of an express contract.[21]

Plaintiff does not allege the existence of an express contract here. Therefore, *Cook* is inapplicable.[22]

The court in *Cook* also discussed the distinction between at-will employment and employer-employee contractual relationships. The trial court had incorrectly assumed "that the only basis upon which an [at-will] employee can sue an employer for breach of contract is discharge."[23] The court clarified that "[a]n at-will employment relationship does not mean that there is no contract between employer and employee. The at-will rule merely creates a presumption that any employment contract which has no specified term of duration is an at-will relationship."[24] Thus, the fact that the plaintiff in *Cook* was at-will was "not dispositive, or even relevant" to her breach of contract claim.[25]

---

[20]*Id.*

[21]*Id.*

[22]*See Acey v. Litton Sys., Inc.*, 2002 WL 845241 (Utah Ct. App. May 2, 2002) (distinguishing *Cook* because "[t]he instant case does not involve an express contract" but rather "an implied-in-fact contract").

[23]*Cook*, 919 P.2d at 60.

[24]*Id.* (quotation marks and citations omitted).

[25]*Id.*

In this case, FedEx does not contend that Plaintiff cannot maintain a breach of contract claim because he is an at-will employee. Rather, FedEx argues that Plaintiff's breach of contract claim cannot survive based on the clear and conspicuous waiver contained in the various policies upon which Plaintiff's breach of contract claim depends. For the reasons discussed above, FedEx is correct and this claim will be dismissed.

B.    DISABILITY DISCRIMINATION

Plaintiff next brings a discrimination claim under the Americans with Disabilities Act ("ADA"). "To establish a prima facie case of discrimination under the ADA, [Plaintiff] must show (1) he is disabled (or perceived as disabled) as defined by the ADA, (2) he is qualified to perform the essential functions of his job with or without reasonable accommodation, and (3) he suffered discrimination as a result of his disability."[26]

Plaintiff makes the conclusory allegations that he "is a disabled person" and specifies that he has "a physical and/or mental impairment that substantially limited one or more major life activities; and/or . . . was regarded as having a physical and/or mental impairment."[27] While Plaintiff's Memorandum in Opposition to FedEx's Motion to Dismiss helps clarify Plaintiff's allegations concerning his alleged disability, the Court finds that Plaintiff's allegations are insufficient to sustain a discrimination claim under the ADA. Therefore, the Court will dismiss

---

[26]*Koessel v. Sublette Cnty. Sheriff's Dep't*, 717 F.3d 736, 742 (10th Cir. 2013).

[27]Docket No. 3, ¶ 58.

this claim, but will permit Plaintiff an opportunity to amend his Amended Complaint to clarify his allegations.[28]

## C.    DISABILITY RETALIATION

The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."[29]  Further, under the ADA it is "unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed . . . any right granted or protected by this chapter."[30]

"A prima facie case of retaliation under the ADA requires: (1) that an employee engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action."[31]  "[I]n order to prosecute an ADA

_____

[28]In its Reply, FedEx argues that Plaintiff's disability claim should be dismissed because Plaintiff did not properly allege that he was discriminated against because of his alleged disability.  Because this issue was raised for the first time in reply, the Court will not address it. However, Plaintiff should be mindful of this argument in drafting his Second Amended Complaint.

[29]42 U.S.C. § 12203(a).

[30]*Id*. § 12203(b).

[31]*EEOC v. Picture People, Inc.*, 684 F.3d 981, 988 (10th Cir. 2012) (brackets and quotation omitted).

retaliation claim, a plaintiff need not show that she suffers from an actual disability. Instead, a reasonable, good faith belief that the statute has been violated suffices."[32]

As with his discrimination claim, Plaintiff only makes conclusory allegations concerning his retaliation claim. Plaintiff alleges that he "opposed an act and/or practice of the Defendants" and "also made a charge, testified, assisted, and participated in an investigation, proceeding, or hearing when he asked for accommodation under the Act."[33] FedEx argues that Plaintiff has failed to adequately allege a causal connection between his protected activity and the alleged adverse actions. Because the Court is unable to determine precisely what protected activity Plaintiff is alleging, his claim must be dismissed. Like his discrimination claim, the Court will permit Plaintiff an opportunity to amend his ADA retaliation claim in order to add additional allegations in support of that claim.

D. NEGLIGENT SUPERVISION

Defendant FedEx argues that Utah's Workers' Compensation Act is the exclusive remedy for Plaintiff's negligent supervision claim. Plaintiff agrees. Therefore, this claim will be dismissed.

E. FALSE LIGHT INVASION OF PRIVACY

"A prima facie case for false light requires a plaintiff to demonstrate that (1) the defendant publicized a matter concerning the plaintiff that placed the plaintiff before the public in a false light, (2) the false light in which the plaintiff was placed would be highly offensive to a

---

[32]*Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1264 (10th Cir. 2001).

[33]Docket No. 3, ¶¶ 65-66.

reasonable person, and (3) the defendant knew or recklessly disregarded the falsity of the publicized matter and the false light in which the plaintiff was placed."[34]

FedEx argues that Plaintiff has failed to sufficiently allege the first element. Plaintiff argues that publicity, as it relates to false light invasion of privacy, only requires publication to more than one person. This is incorrect. "For a 'publication' to be effective, the statements must be 'distributed to a large number of persons, or any broadcast over the radio, or a statement made in address to a large audience.'"[35]

The Restatement (Second) of Torts § 652D, Comment a provides:

"Publicity," as it is used in this Section, differs from "publication," as that term is used in § 577 in connection with liability for defamation. "Publication," in that sense, is a word of art, which includes any communication by the defendant to a third person. "Publicity," on the other hand, means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. The difference is not one of the means of communication, which may be oral, written or by any other means. It is one of a communication that reaches, or is sure to reach, the public.

Thus it is not an invasion of the right of privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons. On the other hand, any publication in a newspaper or a magazine, even of small circulation, or in a handbill distributed to a large number of persons, or any broadcast over the radio, or statement made in an address to a large audience, is sufficient to give publicity within the meaning of the term as it is used in this Section. The distinction, in other words, is one between private and public communication.[36]

---

[34] *Jacob v. Bezzant*, 212 P.3d 535, 544 (Utah 2009).

[35] *Watkins v. Gen. Refractories Co.*, 805 F. Supp. 911, 918 (D. Utah 1992) (quoting Restatement (Second) of Torts § 652D cmt. a (1977)); *see also* Restatement (Second) of Torts § 652E, cmt. a (stating that § 652D cmt. a is applicable to false light claims).

[36] Restatement (Second) of Torts § 652D cmt. a.

The cases cited by Plaintiff each discuss publication with respect to defamation, not false light invasion of privacy. As the Restatement makes clear, the publicity required for a false light claim is different from the publication required for defamation. Indeed, one of the cases cited by Plaintiff in support of his argument specifically recognizes "the requirement that false information be publicized more widely to be actionable under false light invasion of privacy than is necessary to sustain an action in defamation."[37] Thus, Plaintiff's claim cannot survive simply because FedEx allegedly made a false statement to more than one person.

With the correct standard in mind, the Court turns to the facts supporting Plaintiff's false light claim. Plaintiff's claim arises from the circumstances surrounding his drug testing. As discussed above, Plaintiff was required by FedEx to participate in random drug tests. During certain of these tests, Plaintiff was told that he had been reported as previously testing positive on his other tests. Plaintiff alleges that these statements were untrue. In his proposed Second Amended Complaint, Plaintiff further alleges that these statements were made in the presence and hearing of other individuals. Plaintiff also alleges that FedEx informed Plaintiff's fellow employees of his alleged failed drug tests.

These facts, even if accepted as true, are insufficient to state a claim against Defendant FedEx. The only publications that FedEx is alleged to have made were to eScreen, Inc. (the company conducting the drug screening), Rocky Mountain Care Clinic, Inc. (the company collecting the sample for drug screening), and to certain FedEx employees. This limited amount of disclosure is insufficient to state a claim for false light invasion of privacy. As stated, the tort

---

[37] *Jensen v. Sawyers*, 130 P.3d 325, 335 & n.8 (Utah 2005).

is concerned with communication that reaches the public and it is not satisfied when the disclosure is made only to a small group. Thus, this claim will be dismissed.

F.      INTRUSION UPON SECLUSION

"[I]n order to establish a claim of intrusion upon seclusion, the plaintiff must prove two elements by a preponderance of the evidence: (1) that there was 'an intentional substantial intrusion, physically or otherwise, upon the solitude or seclusion of the complaining party,' and (2) that the intrusion 'would be highly offensive to the reasonable person.'"[38]

Plaintiff's intrusion upon seclusion claim also arises from his drug testing. Specifically, Plaintiff alleges that on one occasion he was required to urinate in front of a drug counselor. FedEx argues that Plaintiff's allegations fail to state a claim because the invasion was not offensive. The Court finds that there are sufficient allegations that the intrusion would be highly offensive to a reasonable person. Specifically, Plaintiff has alleged that he was forced into the drug testing program even though he did not have a drug problem, and that he was forced to continue in that program even after providing evidence to FedEx that he was not a drug user. Further, Plaintiff has alleged that he was forced to undergo an observed collection because he was falsely accused of having failed previous drug tests. Under such circumstances, a reasonable person could find that observed collection to be highly offensive.

---

[38]*Stein v. Marriott Ownership Resorts, Inc.*, 944 P.2d 374, 378 (Utah Ct. App. 1997) (quoting *Turner v. Gen. Adjustment Bureau, Inc.*, 832 P.2d 62, 67 (Utah Ct. App. 1992)).

FedEx further argues that the tort is "concerned with an actual intrusion into a space that the plaintiff wishes to remain private."[39]  Because Plaintiff ultimately "consented" to the observed collection, FedEx argues that "Plaintiff's alleged seclusion was not a place in which Plaintiff attempted to keep private."[40]  This argument, however, misstates both the scope of the tort and the factual allegations.

It is true, as FedEx argues, that the tort of intrusion upon seclusion protects against physical intrusion.  However, the tort also protects against "the use of the defendant's senses, with or without mechanical aids, to oversee or overhear the plaintiff's private affairs."[41]  Thus, the tort appears broad enough to encompass an observed urine specimen collection.  Further, while FedEx argues that Plaintiff ultimately consented to the observed collection, this ignores the allegation that FedEx forced Plaintiff to participate in the drug testing at issue.  A reasonable inference can be drawn that, had Plaintiff refused to undergo an observed collection, he would have suffered adverse consequences.  Thus, the Court cannot conclude, based on the allegations presented, that Plaintiff freely consented to the observed collection.

G.     DEFAMATION

To state a claim for defamation, Plaintiff "must show that defendants published the statements concerning him, that the statements were false, defamatory, and not subject to any

---

[39]Docket No. 24, at 15 (quotation marks and citations omitted).

[40]*Id.*

[41]Restatement (Second) of Torts § 652B cmt. b.

privilege, that the statements were published with the requisite degree of fault, and that their publication resulted in damage."[42]

Defendant argues that: (1) Plaintiff's defamation claim fails to meet federal pleading standards; (2) the alleged statements are not defamatory; and (3) the alleged statements were privileged. Each argument will be addressed.

First, FedEx argues that Plaintiff's defamation claim fails to meet the pleading standard. FedEx argues that Plaintiff's allegations do not sufficiently put it on notice as to the content of the allegedly defamatory statements. In support, FedEx relies on *Celli v. Shoell*.[43] In that case, the plaintiffs alleged that the "defendants made defamatory statements, both written and oral, against the plaintiffs over a four-year period."[44] However, "the complaint fail[ed] to identify any specific defamatory statements made by the defendants or when, where, or to whom any defamatory statements were made."[45] Since the plaintiffs failed to identify any defamatory statement, the court dismissed the defamation claim.[46]

While the allegations in Plaintiff's Amended Complaint could be more clear, Plaintiff sufficiently identifies the statement that he alleges is defamatory: that he failed previous drug tests. Plaintiff further identifies to whom these statements were made: eScreen and Rocky

---

[42]*West v. Thomson Newspapers*, 872 P.2d 999, 1007-08 (Utah 1994).

[43]995 F. Supp. 1337 (D. Utah 1998).

[44]*Id*. at 1344.

[45]*Id*. at 1345.

[46]*Id*.

Mountain and their employees, and FedEx employees. While it is not clear when these statements were made or who made them, the allegations contained in the Amended Complaint are sufficient to avoid dismissal.

The other case cited by FedEx supports this conclusion. In *Goldstein v. Kinney Shoe Corp.*,[47] the plaintiffs (counterclaim defendants) similarly complained that the defendants' (counterclaim plaintiffs') allegations were insufficient. The court stated:

> although the defendants did not enclose the allegedly defamatory statements in quotation marks, there is nothing to indicate that they have not set forth the plaintiffs' actual words. Moreover, the plaintiffs have sufficient information to construct a responsive pleading. They are on notice that the defendants seek to hold them liable for publishing accusations that the defendants sexually abused Ms. Goldstein. Accordingly, I will not dismiss the defendants' defamation counterclaims on the grounds that they do not allege the exact words of the statements.[48]

The same result is warranted here.

Second, FedEx argues that the statements are not defamatory. Specifically, FedEx argues that the statements that Plaintiff previously failed drug tests were made to drug testing entities. Thus, they would not be embarrassing. Plaintiff, however, argues that the statements were defamatory per se. "Traditionally, statements that are defamation per se have been required to be false and 'allege criminal conduct on the part of the plaintiff or impute the contracting of some

---

[47]931 F. Supp. 595 (N.D. Ill. 1996).

[48]*Id*. at 597-98.

loathsome disease, unchaste behavior (on the part of a woman) or conduct which is incongruous with the exercise of a lawful business, trade, profession, or office.'"[49]

In this case, the statements—that Plaintiff failed drug tests—necessarily imply that Defendant used illegal drugs. Thus, the statements alleged criminal conduct on Plaintiff's part and are sufficient to be considered defamation per se.

Finally, Defendant argues that the alleged statements were conditionally privileged under Utah law.

> The law has long recognized that a publication is conditionally privileged if made to protect a legitimate interest of the publisher. A conditional privilege may also protect a legitimate interest of either the recipient or a third person. The privilege also extends to statements made to advance a legitimate common interest between the publisher and the recipient of the publication.[50]

The Utah Supreme Court has noted that "a plaintiff can show abuse of a conditional privilege where a statement is made with knowledge of its falsity or with reckless disregard as to its falsity."[51]

In this case, Plaintiff alleges that he put FedEx on notice that he was not a user of illegal drugs and provided them documentation to prove his assertion. Despite this, Plaintiff alleges that FedEx refused to remove him from the drug abuse program and told others that he tested positive for drugs. These allegations, if true, are sufficient to show abuse of the conditional privilege. Therefore, Plaintiff's defamation claim will not be dismissed.

---

[49]*Jacob*, 212 P.3d at 545 (quoting *Larson v. SYSCO Corp.*, 767 P.3d 557, 560 (Utah 1989)).

[50]*Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 58 (Utah 1991).

[51]*Ferguson v. Williams & Hunt, Inc.*, 221 P.3d 205, 212 (Utah 2009).

H.      INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

FedEx's final argument is that Plaintiff's claim for intentional infliction of emotional

distress fails to state a claim.

In order to sufficiently state a claim of intentional infliction of emotional distress, a

plaintiff must demonstrate that the defendant

> intentionally engaged in some conduct toward the plaintiff, (a) with the
> purpose of inflicting emotional distress, or, (b) where any reasonable
> person would have known that such would result; *and* his actions are of
> such a nature as to be considered outrageous and intolerable in that they
> offend against the generally accepted standards of decency and morality.[52]

"To be considered outrageous, the conduct must evoke outrage or revulsion; it must be

more than unreasonable, unkind, or unfair."[53] "'[I]t is for the court to determine, in the first

instance, whether the defendant's conduct may reasonably be regarded as so extreme and

outrageous as to permit recovery.'"[54] "However, '[w]here reasonable men may differ, it is for the

jury, subject to the control of the court, to determine whether, in the particular case, the conduct

has been sufficiently extreme and outrageous to result in liability.'"[55]

> "Due to the highly subjective and volatile nature of emotional distress and the
> variability of its causations, the courts have historically been wary of dangers in
> opening the door to recovery therefore.  This is partly because such claims may

---

[52] *Bennett v. Jones, Waldo, Holbrook & McDonough*, 70 P.3d 17, 30 (Utah 2003)
(emphasis in original) (quoting *Franco v. Church of Jesus Christ of Latter-day Saints*, 21 P.3d
198, 206 (Utah 2001)).

[53] *Franco*, 21 P.3d at 207 (internal quotation marks and citations omitted).

[54] *Cabaness*, 232 P.3d at 499 (quoting *Gygi v. Storch*, 503 P.2d 449, 450 (Utah 1972)).

[55] *Id*. (quoting *Gygi*, 503 P.2d at 450).

easily be fabricated: or as sometimes stated, are easy to assert and hard to defend against."[56]

Therefore, the sufficiency of Plaintiff's pleadings "must be determined by facts pleaded rather than the conclusions stated."[57]

In support of his intentional infliction of emotional distress claim, Plaintiff alleges that FedEx inexplicably increased his workload, thereby requiring him to work between sixteen and nineteen hours per day. Plaintiff alleges that attempts to remedy the situation were rebuffed by his supervisors. After Plaintiff approached another FedEx employee about the situation, Plaintiff alleges that Defendant Bautch verbally berated him, threatened his job, and threatened Plaintiff's efforts to obtain a different job at FedEx. Plaintiff alleges that he was then forced to take a medical leave of absence due to the stress and anxiety he was experiencing. After he had taken his leave, Plaintiff alleges that FedEx required him to participate in a substance abuse program, despite Plaintiff's protestations that he had no drug problem and was placed in the program incorrectly. Plaintiff further alleges that Defendant Bautch threatened him with termination if he did not respond to letters sent to him. Plaintiff also alleges that, after he returned to work, he was forced to do unnecessary and redundant work, was threatened with a low performance evaluation, was informed that managers had disparaged him and disclosed private health care information, and that Defendant Bautch interfered with Plaintiff's efforts to apply for a different job within FedEx.

---

[56] *Franco*, 21 P.3d at 206 (quoting *Samms v. Eccles*, 358 P.2d 344, 345 (Utah 1961)).

[57] *Id.* (quoting *Ellefsen v. Roberts*, 526 P.2d 912, 915 (Utah 1974)).

Though a close question, the Court finds that Plaintiff's allegations do not rise to the level of outrageous and intolerable required to maintain a claim for intentional infliction of emotional distress. Rather, they are of the type of unreasonable, unkind, and unfair actions that are not actionable under a claim of intentional infliction of emotional distress.

The cases cited by Plaintiff support this finding. For example, in *Retherford v. AT&T Communications of Mountain States, Inc.*,[58] the Utah Supreme Court found sufficient facts to support an intentional infliction claim where the plaintiff had alleged "months of persecution by her co-workers" including allegations that her co-workers "shadowed her movements, intimidated her with threatening looks and remarks, and manipulated circumstances at her work in ways that made her job markedly more stressful, all in retaliation for her good-faith complaint of sexual harassment."[59]

Similarly, in *Cabaness v. Thomas*, the plaintiff had alleged years of abusive behavior at the hands of his supervisor Thomas. The court stated:

> Cabaness has alleged an ongoing and continuous pattern of abusive, intimidating, and harassing behavior from his supervisor, Thomas. Throughout Cabaness' career, Thomas insulted and demeaned him by, among other things, calling him "dumbass," "jackass," and "ass hole." Thomas often told Cabaness he had a "piss poor attitude." Indeed, many employees testified that Thomas frequently used gross profanity and consistently verbally harassed the employees, including Cabaness. On one occasion, Thomas told Cabaness that his problem was his wife, and that he needed to get rid of his wife. Various employees testified that Cabaness was often the focus of Thomas' abusive behavior, especially towards the end of his employment with Bountiful Power. Cabaness and other employees frequently complained to Michaelis about Thomas' conduct.

---

[58] 844 P.2d 949 (Utah 1992).

[59] *Id.* at 978.

As in *Retherford*, Cabaness and other employees testified that Thomas' behavior worsened after they complained to Michaelis about his conduct.

Cabaness also provided evidence demonstrating that Thomas intentionally made Cabaness' job more difficult and stressful. For example, on various occasions Thomas would arrive at a work site and mandate that Cabaness and other employees stop what they were doing and do things the way he wanted without providing any justification other than his superiority. Similarly, Cabaness testified that Thomas frequently told him that he was lucky to have his job and that he could be fired if he did not do what he was told.[60]

The allegations in this case fall short of what was alleged in *Retherford* and *Cabaness*.

Therefore, the claim will be dismissed.

FedEx further argues that Plaintiff's intentional infliction of emotional distress claim is barred by the exclusive remedy provision of the Workers' Compensation Act. The Act provides, in pertinent part:

The right to recover compensation pursuant to this chapter for injuries sustained by an employee, whether resulting in death or not, is the exclusive remedy against the employer . . . and the liabilities of the employer imposed by this chapter is in place of any and all other civil liability whatsoever, at common law or otherwise, to the employee . . . on account of any accident or injury or death, in any way contracted, sustained, aggravated, or incurred by the employee in the course of or because of or arising out of the employee's employment, and an action at law may not be maintained against an employer . . . based upon any accident, injury, or death of an employee.[61]

The Utah Supreme Court has held the Workers' Compensation Act provides the exclusive remedy for intentional infliction of emotional distress unless the plaintiff can prove the

---

[60]232 P.3d at 500.

[61]Utah Code Ann. § 34A-2-105(1).

employer "intended or directed the injurious act."[62]  In *Helf v. Chevron USA, Inc.*,[63] the Utah

Supreme Court stated that the "intent to injure" standard requires "an injured employee to show

that his employer or fellow employee manifested a deliberate intent to injure him."[64]  The court

clarified that "the 'intent to injure' analysis focuses on whether the actor knew or expected that

injury would occur as a consequence of his actions."[65]  "Thus, the 'intent to injure' standard

distinguishes between intentional acts resulting in unknown or unexpected injuries, which are

covered under the Act by workers' compensation, and intentional acts resulting in known or

expected injuries, which fall within the intentional injury exception."[66]  Therefore, "a plaintiff

may successfully plead an intentional injury by showing that the injury was *either* intended or

expected."[67]

> We therefore hold that the "intent to injure" standard requires a specific mental
> state in which the actor knew or expected that injury would be the consequence of
> his action.  To demonstrate intent, a plaintiff may show that the actor desired the
> consequences of his actions, or that the actor believed the consequences were
> virtually certain to result.  But a plaintiff may not demonstrate intent by showing
> merely that some injury was substantially certain to occur at some time.  For a
> workplace injury to qualify as an intentional injury under the Act, the employer or
> supervisor must know or expect that the assigned task will injure the particular
> employee that undertakes it.  In other words, the employer must know or expect
> that a specific employee will be injured doing a specific task.  In these situations,

---

[62]*Mounteer v. Utah Power & Light Co.*, 823 P.2d 1055, 1058 (Utah 1991).

[63]203 P.3d 962 (Utah 2009).

[64]*Id*. at 969 (internal quotation marks and citation omitted).

[65]*Id*. at 970.

[66]*Id*.

[67]*Id*. at 971.

the knowledge and expectation that injury will occur robs an injury of its accidental character, moving it out of the realm of negligence and into the realm of intent.[68]

In this case, Plaintiff alleges that Defendants "intentionally engaged in a pattern of abusive and inappropriate behavior toward Mr. Williams," "intended to inflict emotional and psychological distress upon Mr. Williams" and "knew, or should have known, that [their] pattern of abusive and inappropriate behavior towards Mr. Williams would inflict emotional and psychological distress upon Mr. Williams."[69]

These allegations, however, are merely conclusory and are devoid of any further factual development.  Therefore, they are not sufficient to withstand a motion to dismiss.

## IV.  CONCLUSION

It is therefore

ORDERED that Defendant FedEx Corporate Services, Inc.'s Motion to Dismiss (Docket No. 24) is GRANTED IN PART AND DENIED IN PART.

DATED   August 21, 2013.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[68]*Id*. at 974.

[69]Docket No. 3, ¶¶ 79, 80, 81, 135, 137, 138.